UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARGARET A. DOHERTY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:04-cv-2031-DFH-WTL |
| | ) |
| KEY BENEFIT ADMINISTRATORS, INC., | ) |
| | ) |
| Defendant. | ) |

ENTRY DENYING MOTION FOR JUDGMENT AS A MATTER OF LAW

Plaintiff Margaret Doherty's age discrimination claims were tried to a jury over four days from May 29 to June 1, 2007.  The jury found by a preponderance of the evidence that defendant Key Benefit Administrators, Inc. ("KBA") discriminated against Doherty on the basis of age when it fired her on January 22, 2004.  The jury also found that KBA acted willfully in violating the Age Discrimination in Employment Act.  Under the parties' stipulation that plaintiff's actual damages were $82,600, the jury's verdict calls for a total damages award of $165,200.  See 29 U.S.C. § 626(b); *Mathis v. Phillips Chevrolet, Inc.*, 269 F.3d 771, 777 (7th Cir. 2001) (ADEA requires court to assess liquidated damages in same amount as compensatory damages if employer's violation was willful).

At the close of the evidence, KBA moved for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure.  The court did not rule on

the motion at that time. After the jury returned its verdict, the court advised the parties that it would consider the defendant's motion and supporting brief and would either deny the motion or call on plaintiff to respond. After reviewing the brief, the court finds that defendant's motion should be denied and that judgment should be entered on the verdict without further ado.

In deciding a motion for judgment as a matter of law, the court must review all the evidence in the record and must give the non-moving party the benefit of conflicts in the evidence and all favorable inferences that the evidence would reasonably support. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-51 (2000) (reinstating jury verdict in favor of employee in age discrimination case). The defendant's brief recites the correct standard, but on some key issues it assumes the version of certain evidence most favorable to the defense rather than the version most favorable to plaintiff.

In particular, the defendant's brief takes at face value the testimony of Tom Remlinger. See, *e.g.*, Def. Br. at 5. First, defendant assumes that Remlinger was the sole relevant decision-maker. The defendant's brief fails to confront the contrary evidence from Cindy Kilburn and the company's own response to the EEOC charge, which stated that Remlinger and Kilburn made the decision jointly. See Ex. 12. Second, defendant assumes that Remlinger testified truthfully that he acted for legitimate, non-discriminatory reasons. The defendant's brief fails to

-2-

confront the substantial volume of evidence supporting a finding that the stated reasons were pretextual, detailed below.

In evaluating defendant's motion, "the only pertinent question" is whether there was enough evidence to permit the jury to consider the "ultimate" question of discrimination. *Harvey v. Office of Banks and Real Estate*, 377 F.3d 698, 708 (7th Cir. 2004). Plaintiff's proof of discrimination in this case followed the classic mode of indirect proof under *Reeves v. Sanderson Plumbing Products*, 530 U.S. at 142-43 , and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and the steps of that mode of proof provides a usseful framework for evaluating the ultimate question at this stage of the case.[1]

---

[1]The court did not instruct the jury on the indirect method of proof, as the Seventh Circuit taught in *Gehring v. Case Corp.*, 43 F.3d 340, 343 (7th Cir. 1994). Nevertheless, the method can be useful both at the summary judgment stage and in evaluating a motion for judgment as a matter of law. See, *e.g., Reeves*, 530 U.S. at 142, 146-47 (applying steps of indirect proof method to analyze whether Court of Appeals properly ordered judgment as a matter of law for defendant); cf. *Harvey*, 377 F.3d 698, 708 (7th Cir. 2004) (motion for judgment as a matter of law need not be an occasion for the court to "march back through the intermediary burden-shifting steps established by *McDonnell Douglas*").

The court did instruct the jury that it was permitted to infer discrimination from an employer's dishonesty about the reasons for its decision. *Gehring* held that the court is not *required* to give such an instruction, but did not hold that it would be error to give such an instruction. 43 F.3d at 343. For reasons discussed at length on the record in the jury instruction conference, the court concluded that, unlike other permissible inferences that are more obvious (such as the treatment of similarly situated but younger employees), the inference from pretext often is not obvious to a lay jury, especially where there is no direct evidence of discriminatory animus. The court therefore concluded that a sentence informing the jury of the permissible inference was appropriate as part of an instruction that also emphasized that the jury was not to evaluate the wisdom or fairness of the employer's decision, but to decide whether plaintiff had proved she

I.      *Plaintiff's Prima Facie Case*

To meet the threshold requirement of proving a prima facie case of age discrimination, plaintiff was required to show:  (1) she was in the protected class of employees over 40 years of age; (2) she was meeting her employer's legitimate expectations; (3) she was discharged; and (4) she was treated less favorably than similarly situated younger employees.  See, *e.g.*, *Peele v. Country Mutual Ins. Co.*, 288 F.3d 319, 326 (7th Cir. 2002).  Plaintiff produced evidence supporting all the elements of a prima facie case.  Doherty was a member of the protected class, age 59 at the time of her termination.  She was subject to an adverse action by being fired.  Both points are undisputed.

Doherty also produced evidence that she was treated less favorably than a similarly situated person who was substantially younger.  The other customer service manager was Teryna Fitzpatrick, who was under the age of 40 at the time Doherty was terminated.  Doherty and Fitzpatrick held the same position and title and were subject to the same job description.  They were jointly responsible for the performance of the customer service department.  They reported to the same supervisor. They jointly supervised the same department, though there was some allocation of some specific minor responsibilities between the two.  Doherty and Fitzpatrick had comparable experience in managing customer service, and in particular in managing a customer service operation in which the individual

_____

would not have been fired if she had been younger and everything else had remained the same.  See *Gehring*, 43 F.3d at 344.

customer service representatives worked from their own homes using computers and telephones.  See, *e.g.*, *Patterson v. Avery-Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (relevant factors often include whether employees had same supervisor, were subject to same standards, and had comparable experience, education, and qualifications, if employer considered these factors).

Defendant KBA has emphasized that Doherty was paid significantly more than Fitzpatrick, and that there were some minor differences in their responsibilities.  Those differences provided at most a jury question as to the comparability of the two.  They do not support judgment as a matter of law.  See *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007) (reversing summary judgment for employer; similarly-situated inquiry is flexible, considers all relevant factors, and calls for common sense rather than a "magic formula"); *Ballance v. City of Springfield*, 424 F.3d 614, 618-19 (7th Cir. 2005) (finding jury issue on this element of prima facie case); *Firestine v. Parkview Health Systems, Inc.*, 388 F.3d 229, 235-36 (7th Cir. 2004) (reversing summary judgment where employer tried to narrow the 'similarly situated' comparison too tightly); *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000) (comparator must be substantially similar, not identical in all respects; the relevant factors depend on the context of the case).

Doherty also came forward with substantial evidence that would allow a reasonable jury to conclude that she was in fact meeting KBA's legitimate

expectations. The jury heard detailed and conflicting evidence about the performance of the customer service department and its failures to meet performance standards that were important to management, and about the reasons for those failures. The jury could reasonably conclude that Remlinger and Kilburn had adopted several new scheduling and staffing policies that made it more difficult for Doherty and Fitzpatrick to meet their performance standards.

Perhaps most telling, the evidence also allowed the jury to find that Doherty had consistently urged upper management (Kilburn and Remlinger) to allow the customer service department to merge several different "queues" of customer calls to increase the number of customer service representatives available to answer any specific call and thus to reduce the time needed to answer calls. Although Kilburn eventually agreed with Doherty's recommendation in November 2003, Remlinger delayed implementation, presumably for legitimate business reasons based on concerns about relationships with major customers. See Ex. 9 at 54. After the performance statistics continued to be disappointing in November and December, Remlinger finally agreed to the change in January 2004.

The queue merger was implemented on January 19, 2004. The result: performance statistics immediately improved, from below standard to above standard. Yet Doherty was fired just three days later, and Remlinger has claimed credit for both the merger idea and the improvement. The jury could easily conclude that Remlinger fired Doherty immediately after he realized that she had

been right and he had been wrong on this key issue all along.  The other criticisms

of Doherty's performance are addressed in more detail below on the pretext issue.

In short, the evidence could easily allow the jury to find that Doherty was meeting

legitimate expectations, and that she was meeting them so clearly that the

criticisms were knowingly false.

Even if the jury had concluded that Doherty was not performing

satisfactorily, it might still have found the elements of a prima facie case for a case

of disparate discipline.  The evidence would easily support a conclusion that co-

managers Doherty and Fitzpatrick were in the same boat.  If senior management

was not happy with the performance of the customer service department, Doherty

and Fitzpatrick shared the responsibility.  In such situations, disparate discipline

of comparable employees can support a prima facie case.  See *Lucas v. Chicago*

*Transit Auth.*, 367 F.3d 714, 728 (7th Cir. 2004); *Grayson v. O'Neill*, 308 F.3d 808,

818 (7th Cir. 2002); *Flores v. Preferred Technical Group*, 182 F.3d 512, 515 (7th

Cir. 1999).  In this case, the discipline could not have been more disparate.

Doherty was fired; Fitzpatrick received no discipline at all.  She was even given a

raise after Doherty was fired.

II.     *Plaintiff's Evidence of Pretext*

The jury could easily find that Doherty had proved all elements of a prima

facie case of age discrimination.  Under the indirect method of proof, the next step

is analysis of the employer's stated reason(s) for its decision.  The evidence in this

case indicates that KBA articulated different reasons at different times.  Starting with the most recent statement, Remlinger testified at trial that he decided to terminate Doherty.  He testified that he did so because her response to the written warning she received on January 8, 2004 showed that she was unwilling to make the effort needed to measure customer service performance using the measure he preferred, based on "availability" of customer service representatives.  In its response to the EEOC, KBA wrote that Doherty was fired for two reasons:  (1) she had failed to meet known relevant performance standards, and (2) she had a poor attitude toward her immediate managers (Kilburn and Remlinger).  At the time of termination, Kilburn had written that Doherty was fired because she had failed to improve on three of the four areas identified in the written warning.  See Ex. 11. At the time of termination, Remlinger had told Doherty that she was being fired for poor performance, though the testimony is not as detailed on this point as is the documentation.  Any of these stated reasons would be a legitimate non-discriminatory reasons sufficient to shift the burden back to the plaintiff to show that the stated reasons are pretexts.

It is well established that when an employer provides shifting and inconsistent reasons for its actions, a jury may infer that the stated reasons are pretexts.  *E.g.*, *Harvey*, 377 F.3d at 712 (7th Cir. 2004); *Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672, 677-78 (7th Cir. 2003); *O'Neal v. City of New Albany*, 293 F.3d 998, 1005-06 (7th Cir. 2002); *Lawson v. CSX Transportation, Inc.*, 245 F.3d 916, 931-32 & n.13 (7th Cir. 2001); *Hasham v. California State Bd.*

*of Equalization*, 200 F.3d 1035, 1045-46 (7th Cir. 2000); *Perfetti v. First National Bank of Chicago*, 950 F.2d 449, 451 (7th Cir. 1991) (direct evidence of pretext includes contradiction between stated reason at trial and documentary evidence from time of decision, or contradiction among witnesses to the decision). The evidence of pretext in this case was more extensive and more persuasive than this judge has ever seen in employment discrimination cases that have gone to trial.

Begin with Exhibit 12, the company's response to Doherty's EEOC charge. The company told the EEOC that Doherty had been fired for failing to meet "known, relevant performance requirements" and for her poor attitude toward her immediate managers. There was no documentary support for the "poor attitude" rationale. Based on the oral testimony, the jury could easily conclude that this highly subjective point had no support in fact and had never been communicated to Doherty. The evidence would easily allow the jury to find that this was a classic instance of pretext.

As for the cited performance standards, the evidence showed that when senior management (Remlinger) finally adopted key recommendations by Doherty, especially the queue merger on January 19, 2004, the performance standards were met. KBA's claim in Exhibit 12 that the statistics did not improve until after Doherty was fired was demonstrably false, and Remlinger and Kilburn knew it was false. In fact, both Remlinger and Kilburn testified at trial that this was false. (Recall also that the evidence from KBA was in conflict as to whether Kilburn

played a role in deciding to terminate Doherty.)  The jury could easily find that the claim in Exhibit 12 that Fitzpatrick was meeting performance standards while Doherty was not also was false.

Exhibit 11 is a memorandum to the file by Cindy Kilburn about the reasons for firing Doherty.  Remlinger himself testified that Exhibit 11 was also simply false.  The jury could easily agree.  On January 8, 2004, Kilburn had given Doherty a written warning based on her alleged failure to perform in four areas: (1) improving the call center's performance statistics; (2) providing daily production reports; (3) providing weekly performance summary reports; and (4) improving responsiveness to e-mails from supervisors. Ex. 8.  Kilburn wrote that Doherty had not improved in three of the four required areas specified in the written warning.  But Kilburn could not keep her story straight about which of the four Doherty had failed to improve.  At trial she testified that the one area Doherty had improved on was the performance statistics.  At her deposition, Kilburn had testified that Doherty had improved in only the daily production reports.  See Kilburn Dep. at 212-13 (used to impeach trial testimony).

Apart from the inconsistency, the jury could easily conclude both (a) that Doherty had in fact improved on all four measures, and (b) that Kilburn must have known that when she wrote Exhibit 11.  The performance statistics had improved, especially after Remlinger finally accepted Doherty's long-standing recommendation to merge "queues."  Doherty provided prompt daily e-mail

-10-

Case 1:04-cv-02031-DFH-WTL   Document 107   Filed 06/05/07   Page 11 of 15 PageID #: 1393

production reports of customer service performance to Remlinger and Kilburn.[2]

Doherty also improved any supposed deficiencies in responding to e-mails from

Kilburn and Remlinger. Regarding the one remaining area, the weekly

performance reports for the customer service representatives, the jury could easily

find that both Kilburn and Remlinger knew that the much younger co-manager

Fitzpatrick (who was neither fired nor disciplined) actually had lead responsibility

for preparing those reports, yet Doherty was the one fired for the slow reports.

As for Remlinger's trial testimony, there was no direct rebuttal of his

subjective conclusion that Doherty had failed to "buy in" to the "availability"

concept. Yet all the different earlier rationales and conflicting testimony from

Kilburn and Doherty provided ample reason to conclude that Remlinger's trial

testimony amounted to merely the last line of defense that might survive scrutiny

if the jury believed him. The jury was not required to believe him, especially in the

face of the extensive record of inconsistency and deception. The jury could easily

conclude that Doherty was the only one who really "bought in" to the concept.

She was the only manager involved who actually produced specific and ultimately

successful recommendations for improving availability and productivity, and both

Remlinger and Kilburn knew it.

_____

[2]Kilburn lost the last shreds of any credibility when she was shown each of
the e-mails from Doherty with "daily reports" from January 9 – 22, 2004, the
period between Doherty's written warning and her termination. Kilburn claimed
not to know whether those were in fact the daily reports on performance statistics.
In her deposition, however, she had said this was the one area in which Doherty
had improved after the warning. Kilburn Dep. at 213. Remlinger at least
acknowledged at trial that he received the needed reports from Doherty.

The jury heard evidence of other examples of deception and inconsistency. For example, when Kilburn gave Doherty the written warning on January 8, 2004, Doherty asked why she was getting a written warning without first having received an oral warning, as per company policy.   Kilburn told her that she had given her an oral warning in the meeting on December 16, 2003 with Fitzpatrick and Donna Imel.  See Ex. 10 at 3.  KBA's practice was to note such oral warnings for the file. There was no documentation of any oral warning for Doherty.  Both Doherty and Fitzpatrick testified that Kilburn gave no disciplinary warning in that meeting. Instead, they testified, Kilburn had told them that the meeting was a brainstorming session and that everyone in the room was responsible for improving performance.

The evidence also indicated sharp departures from KBA's standard disciplinary practice and from the terms of the written warning to Doherty.  The written warning was not preceded by an oral warning.  The written warning also indicated that Doherty had 60 days to improve her performance, and that failure could lead to the next disciplinary step of probation.  Instead, after Doherty had improved performance in all identified areas, she was fired just 14 days later.  The law did not require KBA to follow its standard disciplinary practice, of course, but the departures are evidence the jury could consider in evaluating KBA's honesty and motivation.

KBA's after-the-fact effort to shift extra responsibility from Fitzpatrick onto Doherty also called the company's honesty into question. Remlinger and Kilburn claimed that they had told Doherty that she was "senior" or the "de facto" leader of the customer service department. There is no documentation of any such distinction between Doherty and Fitzpatrick. The jury could find that in fact Remlinger and Kilburn never told Doherty that she had such senior leadership responsibilities, and that the explanation was a false effort to justify their decision to single out Doherty for discipline and then firing.[3]

Finally, though Doherty had no direct evidence of age discrimination, she offered evidence that KBA used arguable proxies for age discrimination: purporting to distinguish between Doherty and Fitzpatrick based on the extent of their experience (which was not substantially different), as well as Fitzpatrick's need to keep her work-days shorter to take care of her young children at home. This evidence clearly was not enough to support a direct proof of age discrimination. See *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1125-26

---

[3]One other feature of the case should be noted. Much of the evidence in this case came from e-mail records. See Ex. 9. The parties agreed in Exhibit 102 that KBA managed to find and produce only 12 of 89 e-mails that date from January 9 through January 22, 2004. The rest came from Doherty herself, who had managed to save them. Doherty filed her EEOC charge of discrimination quickly, on April 19, 2004. See Cmplt. Ex. A. KBA provided its response (Exhibit 12) on June 1, 2004. The court assumes KBA did not destroy any relevant e-mail records after it learned of the EEOC charge. It appears to be an unexplored mystery why KBA had so few relevant e-mails left just three or four months after it fired Doherty. KBA's effort in closing argument to cast suspicion on Doherty – by suggesting that the e-mails in Exhibit 9 did not reflect a fair selection of those from Remlinger and Kilburn asking for responses – was a bold effort to divert attention from that mystery.

(7th Cir. 1994) (employer decisions based on factors that often correlate with age do not violate age discrimination statute).   But in light of all the other circumstantial evidence, the evidence that the employer considered factors that could be proxies for or correlate with age could reasonably add some weight to the jury's verdict.  See, *e.g.*, *Huff v. UARCO, Inc.*, 122 F.3d 374, 384-85 (7th Cir. 1997) (reversing summary judgment for employer; ambiguous statements about seniority that might refer to age could be considered as part of evidence in indirect proof case).

The indirect proof of age discrimination in this case did not require the jury to find discrimination, but it was more than strong enough to permit the jury to find discrimination.  See *Reeves*, 530 U.S. at 147-48, 151-53.  The court therefore denies defendant's motion for judgment as a matter of law.  The court will enter final judgment in favor of Doherty in the sum of $165,200.  Plaintiff may submit a petition for attorney fees and costs no later than June 21, 2007, but the court will extend that deadline upon joint motion if the parties wish to pursue negotiations at this stage.

So ordered.

Date: June 5, 2007

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

-14-

Copies to:

David M. Brooks
BROOKS KOCH & SORG
dmbrooks@bbks-law.com

Gregory W. Guevara
BOSE MCKINNEY & EVANS, LLP
gguevara@boselaw.com

Denise K. LaRue
HASKIN LAUTER LARUE & GIBBONS
dlarue@hlllaw.com

Andrew M. McNeil
BOSE MCKINNEY & EVANS, LLP
amcneil@boselaw.com